UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
THOMAS GANTT,                                        :

       Petitioner,  :

  -against-       :

WILLIAM BROWN, Superintendent of Eastern :
Correctional Facility, et al.,

           :

      Respondent.
-----------------------------------------------------------X

08 Civ. 10194 (CM) (DF)

**REPORT AND
RECOMMENDATION**

**TO THE HONORABLE COLLEEN McMAHON, U.S.D.J.:**

  Petitioner Thomas Gantt ("Petitioner") seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254, following his state conviction, upon a jury verdict, of Murder in the Second

Degree, in violation of New York Penal Law § 125.25[1].  (Petition Under 28 U.S.C. § 2254 For

Writ of Habeas Corpus by a Person in State Custody, dated Nov. 24, 2008 ("Pet." or "Petition")

(Dkt. 2).)  Petitioner is incarcerated at Eastern Correctional Facility in Napanoch, New York.

(Petitioner's Memorandum of Law and Appendix in Support of Petition for a Writ of Habeas

Corpus, dated Nov. 24, 2008 (Dkt. 3) ("Pet. Mem.") at 2.)

  In his habeas petition, Petitioner asserts a single claim – a Confrontation Clause claim

under *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), challenging the trial court's

admission into evidence of a statement made to police by the victim of the crime.  (*See* Pet.,

¶ 12; Pet. Mem., at 3 n. 1.)  Respondent William Brown ("Respondent"), the Superintendent of

Eastern Correctional Facility, argues that Petitioner's claim should be dismissed as without

merit.  (*See* Memorandum of Law in Support of Answer Opposing the Petition for a Writ of

Habeas Corpus, filed May 22, 2009 (Dkt. 8) ("Resp. Mem."), at 20.)  For the reasons set forth

below, I recommend that the Petition be dismissed.

**BACKGROUND**

A.      **Factual Background**

Following a jury trial, Petitioner was convicted of Murder in the Second Degree for

shooting and killing Richard Moore ("Moore").  The facts of the shooting, based on the evidence

presented by the prosecution at trial, are as follows:

Moore was a drug dealer, who sold crack, cocaine, and heroin from a building in

Manhattan, at 130th Street, between Lenox and Seventh Avenues.  (Trial Tr. I,[1] at 101-02.)  On

August 15, 1994, John Haywood ("Haywood"), who worked for Moore, was already at that

location when Moore arrived there, shortly before 9:00 p.m.  (*Id.*, at 124-25.)  Soon after

Moore's arrival, Moore's old friend Anthony Pinkston ("Pinkston") also "came by," on his way

home from work.  (Trial Tr. II, at 355-56.)

Moore and Pinkston had planned to smoke marijuana together that evening, so Pinkston

sat down on the stoop of a building near by, to wait for Moore, while Moore handled business

with Haywood.  (*Id.*, at 357-58.)  While Pinkston was waiting, a woman, who was a regular

customer for drugs, called out to Haywood, and Moore instructed Haywood to assist her,

believing she "might want to buy something."  (Trial Tr. I, at 127-28.)  Meanwhile, Pinkston saw

a man approaching the scene on a bicycle.  (Trial Tr. II, at 359.)  Pinkston testified at trial that he

---

[1] The transcripts of the state court proceedings in this matter have been presented to this
Court in two volumes.  The first volume, docketed in this Court as Dkt. 10, contains transcripts
of pre-trial proceedings and voir dire, conducted July 7-8, 2005 (together, "Pre-trial Tr."), and
the first portion of the trial, conducted July 11, 2005 ("Trial Tr. I").  The second volume of
transcripts, docketed in this Court as Dkt. 9, contains the transcript of the remainder of the trial,
conducted July 12-15, 2005 ("Trial Tr. II"), and July 18-19, 2005 ("Trial Tr. III"), as well as the
transcript of the sentencing proceedings, conducted September 13, 2005 ("Sentencing Tr.").

saw the man pull out a gun, at which point Pinkston ran into the building where Moore had his drug operation.  (*Id.,* at 359-60.)

At the same time, Haywood, who had not yet approached the female customer calling for him, heard a gunshot.  (Trial Tr. I, at 128.)  Haywood testified that, as he turned around, he saw Moore falling back into a chair and Petitioner, standing about four or five feet from Moore, holding a gun.  (*Id.*, at 128-30, 141.)  Haywood further testified that he looked directly into the shooter's face and recognized him as Petitioner.  (*Id.,* at 130-31.)

As additional shots rang out, both Haywood and Pinkston ran up to the roof of the building.  (*Id.,* at 132-33; Trial Tr. II, at 359-60, 363-65.)  From the roof, they saw Moore lying on the sidewalk and Petitioner riding away from the scene on his bicycle.  (Trial Tr. I, at 133, 145-46; Trial Tr. II, at 360, 365-66.)  Haywood and Pinkston each came down from the roof and, in turn, approached Moore, who was still lying on the ground.  (Trial Tr. I, at 134, 146; Trial Tr. II, at 360, 366-67.)  Haywood testified that, when he reached Moore, Moore stated, "It was Tommy."  (Trial Tr. I, at 134.)  Pinkston similarly testified that, when he got down to Moore, Moore told him that "Tommy Gantt" had shot him.  (Trial Tr. II, at 361.)

That night, Sergeant Carmen McDermott was on radio motor patrol on 150th Street, when she received a call that a man had been shot on 130th Street.  (Trial Tr. II, at 341.)[2]  When Officer McDermott arrived at the scene, she found Moore lying on the sidewalk, shot in his left thigh and stomach.  (*Id.,* at 342.)  Moore was conscious at the time, though he appeared to be in critical condition.  (*Id.*)  Officer McDermott testified that she asked Moore who shot him, in an

---

[2] At the time, Sergeant McDermott was working as a uniformed police officer, and her name was Carmen Alcivar.  (Trial Tr. II, at 339-41.)  As the trial transcript refers to her by the name she used at the time of trial, this court, for ease of reference, will refer to her herein as "Officer McDermott."

effort to "further [her] investigation" and to provide information to central police headquarters in case the shooter was still in the vicinity.  (*Id.,* at 348.)  According to Officer McDermott, Moore replied that "Tommy Grant" had shot him.  (*Id.,* at 343.)

Moore was taken to Harlem Hospital on the night of the shooting, August 15, 1994.  (*Id.,* at 343, 405.)  On January 1, 1995, after multiple surgeries and more than four months of treatment, Moore died of complications from the bullet wounds.  (*Id.,* at 490-98.)

### B.   Procedural History

#### 1.   Pre-Trial Proceedings, Trial, and Sentencing

On March 15, 2001, Petitioner was convicted, following a jury trial, of second-degree murder, and, on March 28, 2001, he was sentenced to an indeterminate prison term of 22 years to life. (Resp. Mem., at 2.)  By decision dated January 7, 2004, however, the trial court vacated Petitioner's conviction, due to the prosecution's failure to disclose *Rosario* and *Brady* materials.[3] (*Id.,* at 2-3.)  The State appealed, but, on December 21, 2004, the Appellate Division, First Department, affirmed the trial court's decision to vacate the judgment.  *See* 786 N.Y.S.2d 492.

Petitioner was then tried for a second time, commencing on July 7, 2005.  (Resp. Mem., at 3.)  Prior to the second trial, Petitioner's attorney moved *in limine* to preclude, *inter alia,* Officer McDermott from testifying as to Moore's statement to her, identifying Petitioner as the shooter.  (Answer and Appendix in Opposition to Petitioner for a Writ of Habeas Corpus ("Resp.

---

[3] In *People v. Rosario*, 9 N.Y.2d 286 (N.Y. 1961), the New York Court of Appeals held that a criminal defendant is entitled to examine any prior statement of a witness called by the prosecution, where the prior statement relates to the subject matter of the witness's testimony, *id.* at 289-91.  That rule was later codified as New York Criminal Procedure Law § 240.45(1)(a).  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  *Id.* at 87.

App'x") (Dkt. 7), Ex. A (Motion *In Limine*, dated July 7, 2005).)  In particular, Petitioner argued that the introduction of such testimony would violate Petitioner's rights under the Confrontation Clause of the Sixth Amendment, because Petitioner never had the opportunity to cross-examine Moore.  (*Id*., at 5.)  Petitioner relied on *Crawford*, which held that out-of-court statements that are "testimonial" in nature are inadmissible at trial, where the declarant does not testify and has not previously been cross-examined.  (*Id.*, at 6.)  Petitioner contended that Moore's statement to Officer McDermott was testimonial, as it was knowingly given in response to police questioning and could be expected to be used prosecutorially.  (*Id.*)  The trial court denied the motion to preclude.  (Pre-Trial Tr., at 280-83.)

At trial, the prosecution's witnesses included Officer McDermott, as well as Haywood and Pinkston, who testified as described above.  On July 19, 2005, the jury found Petitioner guilty of Murder in the Second Degree.  (Trial Tr. III, at 10-12.)

On August 30, 2005, Petitioner moved before the trial court, pursuant to New York C.P.L. § 330.30, to set aside the verdict, on the ground that it was obtained in violation of Petitioner's rights.  (Resp. App'x, Ex. B (Motion to Set Aside the Verdict, dated August 30, 2005).)  On September 13, 2005, the court denied Petitioner's motion on the record, and then proceeded to sentence Petitioner to 22 years to life in prison.  (*See* Sentencing Tr., at 3-4, 14.)

### 2.  <u>Direct Appeal</u>

On direct appeal, Petitioner again argued, *inter alia*, that his rights under the Confrontation Clause were violated by the admission of Officer McDermott's testimony regarding Moore's identification of Petitioner shortly after the shooting.  (*See* Resp. App'x, Ex. A, at 6.)  Petitioner contended that Moore's statement to Officer McDermott was testimonial, as it was "knowingly given in response to police questioning," and that it was

5

therefore inadmissible under *Crawford*.  (*Id*. (quoting *Crawford*, 541 U.S. at 53 n.4) (internal

quotation marks omitted).)

On December 27, 2007, the Appellate Division affirmed Petitioner's conviction.  *See*

*People v. Gantt*, 848 N.Y.S.2d 156 (1st Dep't 2007).  In relevant part, the Appellate Division

found that:

> [T]he statement to Officer McDermott was not testimonial.  While
> Moore's statement was in response to McDermott's question, that
> solitary inquiry, posed to Moore in the course of a fast-moving
> on-the-scene crime investigation, is hardly the sort of structured
> police investigation to which *Crawford* is directed.

*Id.* at 165.

In January 2008, Petitioner sought leave to appeal to the New York State Court of

Appeals, asserting, *inter alia*, the same Confrontation Clause claim.  (*See* Resp. App'x, Ex. F

(Letter to the Court of Appeals from Paul Wiener, Esq., dated Jan. 9, 2008, at 1 (seeking leave to

appeal "based on all the issues raised in [Petitioner's] Appellate Division brief"); Letter to the

Court of Appeals from Paul Wiener, Esq., dated Jan. 30, 2008, at 6 n.1 (expressly raising claim

under *Crawford*)).)  The Court of Appeals denied leave to appeal on February 28, 2008.  (*See id.*,

Ex. G (Certificate Denying Leave, dated Feb. 28, 2008).)

### 3. **The Habeas Petition**

On December 3, 2008, acting through counsel, Petitioner filed a petition in this Court for

a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Pet.)  Petitioner asserted that he was

entitled to habeas relief on the same ground raised on his direct appeal; specifically, Petitioner

claimed that his Sixth Amendment right to confrontation was violated by the admission of

Moore's statement to Officer McDermott, identifying Petitioner as the shooter, because

Petitioner did not have the opportunity to cross-examine Moore and the statement was testimonial within the meaning of *Crawford* and its progeny. (*Id.*, ¶ 12; Pet. Mem. at 37.)

Respondent opposed the Petition on May 22, 2009 (Dkts. 7-8), and Petitioner filed a reply on June 12, 2009. Then, on March 1, 2010, after the matter was fully submitted, Petitioner's counsel wrote a letter to this Court, enclosing a copy of *People v. Bryant*, 769 N.W.2d 65 (Mich. 2009), a Michigan Supreme Court case that was closely analogous to Petitioner's case and favorable to Petitioner's position. (*See* Letter to the Court from Paul Wiener, Esq., dated Mar. 1, 2010 ("3/1/10 Wiener Ltr.") (Dkt. 12).) In that letter, Petitioner's counsel informed the Court that the United States Supreme Court had granted certiorari to review *Bryant*. (*Id.*) On February 28, 2011, the Supreme Court rendered a decision in *Bryant* that is not helpful to Petitioner's claim. *See Michigan v. Bryant*, 131 S. Ct. 1143 (2011) (holding that the admission of the victim's testimony to police officers did *not* violate the Confrontation Clause).

On July 7, 2011, Petitioner's counsel wrote another letter to the Court, enclosing a copy of a recent decision in *People v. Clay*, 926 N.Y.S.2d 598 (2d Dep't 2011). (*See* Letter to the Court from Paul Wiener, Esq., dated July 7, 2011 ("7/7/11 Wiener Ltr.") (Dkt. 13).) Petitioner claimed that *Clay* supported his Petition and pointed out that the decision distinguished the Supreme Court's decision in *Bryant*. (*Id.*)

## DISCUSSION

I.   **APPLICABLE LEGAL STANDARDS**

    A.   **Statute of Limitations**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition must be filed within a one-year limitations period beginning on the latest of four dates, usually "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A) (2000); *see also Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (citations omitted) (judgment becomes "final" for purposes of section 2244 upon "the completion of direct appellate review in the state court system and either the completion of certiorari proceedings in the United States Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of] time to seek direct review via certiorari").

Here, as Respondent concedes, Petitioner's claims are timely because his Petition was filed within one year of the date that Petitioner's conviction became final.  *See Williams*, 237 F.3d at 150-51.

    B.   **Exhaustion**

A federal court may not consider a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies.  *See* 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his federal claims to the state courts, thereby affording those courts the "initial opportunity to pass upon and correct alleged violations of . . . [the] prisoners' federal rights."  *Picard*, 404 U.S. at 275 (citation omitted).

In this case, as Respondent also concedes, Petitioner exhausted his Confrontation Clause claim by expressly raising it as a *Crawford* claim on direct appeal, in both his brief to the Appellate Division and his letter requesting leave to appeal to the Court of Appeals.  (*See* Resp. App'x., Ex. C, at 57-64; *id.*, Ex. F; *see also Karaj v. Gonzales*, 462 F.3d 113, 117 (2d Cir. 2006) (noting that habeas petitioner may "exhaust his federal constitutional claim before a state appellate court by . . . relying on federal constitutional cases" (citing *Daye v. Attorney Gen.*, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*)).)

## C.     Standard of Review

Where a federal constitutional claim has been adjudicated on the merits by the state court, this Court must accord substantial deference to the state court's decision under the standard of review dictated by AEDPA.  *See* 28 U.S.C. § 2254(d); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims, with *res judicata* effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").  The relevant section of AEDPA provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In addition, under AEDPA, where not manifestly unreasonable, a state

court's factual findings are presumed correct, and can only be overcome by "clear and

convincing evidence."  28 U.S.C. § 2254(e)(1).

Under AEDPA, a state court decision is "contrary to" clearly established federal law

where the state court either applies a rule that "contradicts the governing law" set forth in

Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a

[Supreme Court] decision" and arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000).[4]  An "unreasonable application" of clearly established federal law occurs when

the state court identifies the correct governing legal principle, but unreasonably applies that

principle to "a set of facts different from those of the case in which the principle was

announced."  *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003).  The state court's decision,

however, "must have been more than incorrect or erroneous" –  rather, "[t]he state court's

application must have been 'objectively unreasonable.'"  *Wiggins v. Smith*, 539 U.S. 510, 520-21

(2003) (quoting *Williams*, 529 U.S. at 409).  In other words, the state court's ruling must have

been "so lacking in justification that there was an error well understood and comprehended in

existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 131 S.

Ct. 770, 786-87 (2011).

---

[4] The Supreme Court has emphasized that "clearly established [f]ederal law" refers only
to the "'holdings, as opposed to the dicta, [of the Supreme Court's] decisions as of the time of
the relevant state-court decision.'"  *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (quoting
*Williams*, 529 U.S. at 412); *see also Rodriguez v. Miller*, 537 F.3d 102, 107 (2d Cir. 2007)
("*Musladin* admonishes courts to read the Supreme Court's holdings narrowly and to disregard
dicta for habeas purposes.").  Thus, a principle of constitutional law "grounded solely in the
holdings of the various courts of appeals or even in the dicta of the Supreme Court" cannot
provide the basis for habeas relief.  *Rodriguez*, 537 F.3d at 106-07 (citing *Musladin*).

II.     **PETITIONER'S CLAIM**

Petitioner claims that he was denied his Sixth Amendment right of confrontation when, despite the fact that Petitioner had no opportunity to cross-examine Moore before his death, the trial court allowed Officer McDermott to testify that Moore had identified Petitioner as the shooter.  (Pet. Mem., at 37.)  As the Appellate Division rejected this claim on the merits, *see Gantt*, 848 N.Y.S.2d at 165, this Court now reviews this claim under the standard of review set forth in AEDPA, *see* 28 U.S.C. § 2254(d).

Under AEDPA, this Court must look to Supreme Court precedent to determine whether, at the time of its decision, the Appellate Division failed to apply or unreasonably misapplied "clearly established" federal law.  28 U.S.C. § 2254(d); *Musladin*, 549 U.S. at 74.  As noted above, this Court is not free to ground a habeas decision in the holdings of the circuit courts, or even in Supreme Court dicta.  *See Musladin,* 549 U.S. at 74; *Rodriguez,* 499 F.3d at 140.  Here, Petitioner contends that the Appellate Division misapplied federal law – as clearly established at the time of Petitioner's appeal by *Crawford* and two other decisions issued by the Supreme Court shortly thereafter, *Davis v. Washington,* 547 U.S. 813 (2006) and its companion case, *Hammon v. Indiana*, 547 U.S. 813 (2006) – and that the state court thereby denied him his right to confrontation.

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him."  U.S. Const. amend. VI.  This right of confrontation, which is secured for defendants in state criminal proceedings through the 14th Amendment, *Pointer v. Texas*, 380 U.S. 400, 406 (1965), "means more than being allowed to confront the witness physically," *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974) (citations omitted).  "The main and essential purpose of confrontation is to secure

11

for the opponent the opportunity of cross-examination." *Id.*  In *Crawford*, however, the Supreme

Court held that the reach of the Confrontation Clause is limited to "testimonial" evidence.

*Crawford*, 541 U.S. at 53-54.  Where a witness is not produced at trial, the witness's out-of-court

testimonial statement against the defendant will only be admissible where the witness is

unavailable at trial and the defendant has had a prior opportunity to cross-examine the witness.

*Id.* at 68.

  Both Petitioner and Respondent rely on *Davis v. Washington* ("*Davis*") and *Hammon* to

support their arguments as to whether Moore's statement to Officer McDermott was, or was not,

testimonial, within the meaning of *Crawford*.  *Davis* clarified that, when the primary purpose of

a police interrogation is to respond to an ongoing emergency, statements made during that

interrogation are nontestimonial.  *Davis*, 547 U.S. at 822.  On the other hand, when there is no

such ongoing emergency, and the primary purpose of a police interrogation is to establish past

criminal events for future prosecution, then statements made to the police are testimonial.  *Id.*

Thus, in deciding whether or not a statement is testimonial, courts must look to the "primary

purpose" of a police interrogation.  *Id.* at 828.

  This analysis is illustrated by the differing outcomes of *Davis* and *Hammon*.  In *Davis*,

the Supreme Court found that certain statements made during a "911" call were nontestimonial.

*Davis*, 547 U.S. at 829.  In that case, the relevant statements were made to a 911 operator by the

victim of a domestic disturbance.  *Id.* at 817-18.  In finding these statements to have been

nontestimonial, the Court reasoned that the victim "was speaking about events *as they were*

*actually happening*, rather than describ[ing] past events."  *Id.* at 827 (emphasis and alteration in

original) (internal quotation marks and citation omitted).  Furthermore, "any reasonable listener

would recognize that [the victim] was facing an ongoing emergency" and "the elicited

statements were necessary to be able to *resolve* the present emergency." *Id.* (emphasis in original). The Court also noted the informality of the interrogation, which took place during a frantic telephone call. *Id.*

Conversely, in *Hammon*, the Court held that statements made during an interrogation after police responded to a domestic disturbance were testimonial. 547 U.S. at 829-32. Upon responding to the domestic disturbance, the police found the wife sitting on her front porch. *Id.* at 819. The wife allowed police officers to enter her home, where they observed broken glass on the floor and found the husband in the kitchen. *Id.* Then, while holding the husband in a separate room, police questioned the wife regarding what had happened. *Id.* at 819-20. The Court found that the wife's statements to police, along with an affidavit that she signed during the interrogation, were testimonial in nature. *Id.* at 829-32. In reaching this conclusion, the Court applied the "primary purpose" test and determined that the primary purpose of the police interrogation was "to investigate a possible crime." *Id.* at 830. Unlike in *Davis*, there was no ongoing emergency. *Id.* at 829. Moreover, the events discussed during the interrogation had taken place at an earlier time, and the questioning occurred while the defendant was being detained in another room. *Id.* at 830.

Applying this line of Supreme Court cases, the Appellate Division held that Moore's statement to Officer McDermott, identifying Petitioner as the shooter, was nontestimonial. *Gantt*, 848 N.Y.S.2d at 165. The court found that the circumstances posed an ongoing emergency, given that "Officer McDermott, responding to the scene of a shooting that had just occurred, could not have been certain that the assailant posed no further threat to the victim or the onlookers." *Id.* The Appellate Division determined that Moore's statement to Officer McDermott "was elicited . . . as part of an attempt to assess what had happened to cause [the

13

victim's] injuries and whether there was any continuing danger to the others in the vicinity, and not merely to learn what had happened in the past." *Id.* (alteration in original) (internal quotation marks and citation omitted). The court also stated that Officer McDermott's "on-the-scene crime investigation[] is hardly the sort of structured police investigation to which *Crawford* is directed." *Id.*

Under AEDPA's highly deferential standard, this Court cannot find that the Appellate Division unreasonably applied the Supreme Court law that was in place at the time of its decision; certainly, the Appellate Division's reasoning was not "so lacking in justification" that this Court could find "an error in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. In addition, subsequent Supreme Court case law further supports the conclusion that the Appellate Division's decision reasonably applied *Crawford* and its progeny. The facts of *Michigan v. Bryant*, a 2011 Supreme Court decision, are even more analogous to the instant case than *Davis* or *Hammon*. In *Bryant*, the Supreme Court held that a shooting victim's statements to police identifying and describing the shooter were not testimonial. *Bryant*, 131 S. Ct. at 1166-67. The victim made the statements when police responded to the scene to find the victim lying on the ground at a gas station, with a gunshot wound to his abdomen. *Id.* at 1150. In assessing whether the police interrogation occurred in the context of an ongoing emergency, the Court distinguished *Davis* and *Hammon*, because both involved domestic violence, which posed a lesser threat to public safety than an outdoor shooting. *Id.* at 1158. Given the victim's dire condition and the uncertainty of the safety of the scene, the Court held that the "primary purpose of the interrogation" was "to enable police assistance to meet an ongoing emergency." *Id.* at 1167 (quoting *Davis*, 547 U.S. at 822)

14

(internal quotation marks omitted).  The informality of the questioning also supported the Court's determination that the statements were nontestimonial.  *Id.* at 1166.

Even Petitioner initially conceded that the facts of *Bryant* were similar to the facts of his own case.  (*See* 3/1/10 Wiener Ltr.)  In Petitioner's case, Officer McDermott responded to the scene of a shooting to find Moore lying on the ground with gunshot wounds, apparently in critical condition.  (Trial Tr. II, at 342.)  As in *Bryant*, Moore's emergency medical condition created a situation in which a first responder (*i.e.*, Officer McDermott) could have assumed an ongoing emergency, until circumstances indicated otherwise.  In addition, the fact that the shooter was no longer on the scene would not preclude the finding of an ongoing emergency.  *See Bryant*, 131 S. Ct. at 1164 ("[T]here was an ongoing emergency here where an armed shooter, whose motive for and location after the shooting were unknown, had mortally wounded [the victim] within a few blocks and a few minutes of where the police found [the victim].")  As in *Bryant*, the location of the assailant was unknown when Officer McDermott responded to the scene of the shooting, and she "could not have been certain that the assailant posed no further threat to the victim or the onlookers."  *Gantt*, 848 N.Y.S.2d at 165.  Moreover, also as in *Bryant*, Officer McDermott's questions to Moore were informal and "in the course of a fast-moving on-the-scene crime investigation."  *Id*.  Taking these facts as a whole, the Appellate Division reasonably found that Moore's statements to Officer McDermott were nontestimonial.

Finally, the decision of the Appellate Division, Second Department, in *People v. Clay*, which distinguishes *Bryant*, does not support Petitioner's claim, as Petitioner contends in his most recent letter to the Court.  (*See* 7/7/11 Wiener Ltr.)  Even disregarding the fact that *Clay* is in no way controlling precedent here, the facts of *Clay* are different in at least one significant respect from the facts presented both here and in *Bryant*.  In *Clay*, as the state court pointed out

in distinguishing *Bryant*, the police officer who obtained the victim's statement was not the first responder to the scene of the shooting. *See Clay*, 926 N.Y.S.2d at 605. Rather, "there were other officers and a police van already present [when this officer arrived on the scene]." *Id.* Therefore, as the court observed, "[i]t stands to reason that the other officers would have already endeavored to determine the nature of any emergency that may have existed." *Id.* *Clay* is inapposite here, where Officer McDermott was, in fact, the first responder to the scene of the shooting. (Trial Tr. II, at 342.)

In sum, the Appellate Division's rejection of Petitioner's Confrontation Clause claim was neither contrary to, nor an unreasonable application of, clearly established federal law that existed at the time of Petitioner's appeal, and I therefore recommend that the Petition be dismissed, pursuant to 28 U.S.C. § 2254(d).

## CONCLUSION

For the foregoing reasons, I recommend that Petitioner's petition for a writ of habeas corpus be dismissed. Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Colleen McMahon, United States Courthouse, 500 Pearl Street, Room 1350, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York, 10007. Any requests for an extension of time for filing

16

objections must be directed to Judge McMahon.   FAILURE TO FILE OBJECTIONS WITHIN

FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL

PRECLUDE APPELLATE REVIEW.   *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-*

*CIO Pension Fund v. Hermann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d

298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v.*

*Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated:  New York, New York
         November 22, 2011

                                        Respectfully submitted,


                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies to:

Hon. Colleen McMahon, U.S.D.J.

Paul Wiener, Esq.
The Legal Aid Society
199 Water Street, 5th Floor
New York , NY 10038

Karen Sara Schlossberg, Esq.
New York County District Attorney's Office
One Hogan Place
New York, NY 10013

17